UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CITADEL BUILDERS, L.L.C. | CIVIL ACTION |
| VERSUS | NO: 23-34 |
| NATIONAL FIRE & MARINE INSURANCE COMPANY AND EVEREST INDEMNITY INSURANCE COMPANY | SECTION: "J"(2) |

## ORDER AND REASONS

Before the Court are a *Motion to Dismiss* **(Rec. Doc. 7)**, filed by Defendants Everest Indemnity Insurance Company and National Fire & Marine Insurance Company, and an opposition filed by Plaintiff Citadel Builders, L.L.C. (Rec. Doc. 10) to which Defendants have replied (Rec. Doc. 14) and to which Plaintiffs have filed a sur-reply (Rec. Doc. 18). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of the partial collapse of the Hard Rock Hotel on October 12, 2019. As the contractor for the project, Plaintiff Citadel Builders, L.L.C. filed this state-court action for breach of insurance contract against Defendants Everest Indemnity Insurance Company and National Fire & Marine Insurance Company over three years later, on November 15, 2022. Everest and National Fire each extended

1

insurance policies to the project's owner, 1031 Canal Development, L.L.C. Although Plaintiff was not initially an explicitly named party to the insurance contract, the builders risk policy included coverage for "Additional Insureds," specifically "all contractors and subcontractors of every tier of the Insured Project," as indicated by written contract or subcontract. *See* Rec. Doc. 8-2 at 4 (National Fire Contract). In a subsequent policy endorsement, Plaintiff is listed as an additional insured. *Id.* at 56.

Although National Fire was the lead insurer—covering the first 75% of loss—both policies insured the risk of building loss or damage. The Everest policy, in particular, envisioned a relationship with that provided by National Fire: "The provisions contained in this Policy shall supersede those of the Lead Policy wherever the same may conflict. The coverage provided by this Policy will be no broader than the coverage provided by the Lead Policy." *See* Rec. Doc. 8-3 at 2 ("Substitution of Terms"). And differences between the policies do exist: the National Fire policy provides a two-year limit for the filing of a breach of contract suit, whereas the Everest policy balloons the deadline to five years.

Plaintiff contends defendants received timely proof of loss through the owner, and although various payments have been made, certain costs remain unpaid. Defendants removed the action through federal diversity jurisdiction of 28 U.S.C. § 1332, and now move for dismissal on prescription grounds.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

2

Case 2:23-cv-00034-CJB-DPC   Document 19   Filed 09/13/24   Page 3 of 7

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Defendants assert that Plaintiff's claims should be dismissed because, under the terms of the National Fire Policy, the commencement of Plaintiff's legal action had a two-year deadline. As the action was filed more than three years after the partial collapse of the Hard Rock Hotel, Defendants insist Plaintiff's action has facially prescribed. As to the five-year language in the Everest Policy, Defendants contend the longer deadline is inapplicable because it is contained within a "Florida Amendatory Endorsement." In contrast, Plaintiff argues the motion to dismiss is meritless due to prescription interruption, delay in claim accrual, and Defendants' continued claim payments and assessment. Most significantly—and for our purposes,

decisively—Plaintiff disputes Defendants' reading of the deadline endorsement within the Everest Policy.

The Everest Policy is a two-page insurance declaration, followed by two builders risk endorsements and a terrorism exclusion endorsement. As previously noted, within the signed declaration itself, the parties agreed that the Everest Policy language would "supersede those of the Lead Policy wherever the same may conflict." Rec. Doc. 8-3 at 2. In the policy's next section, parties likewise agreed on how to treat the "Titles of Provisions and Endorsements":

> The several titles of the various provisions of this Policy as now or hereafter attached to this Policy, are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

*Id.*

Undisputedly, Louisiana substantive law applies to this dispute over an insurance contract delivered within the state. *See Adams v. Unione Mediterranea Di Sicurta,* 220 F.3d 659, 677–78 (5th Cir. 2000). Under Louisiana law, insurance policies are contracts between the insurer and insured, and are interpreted under contract law as provided by the Louisiana Civil Code. *Smith v. Matthews,* 611 So. 2d 1377, 1379 (La. 1993). And, if the language in the policy is clear and unambiguous, the policy should be enforced as written. *Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.,* 958 So. 2d 634, 638 (La. 2007). The question of whether an insurance contract provision is clear, unambiguous, and enforceable is a question of

law for the court to decide. *First Nat'l Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149, 151 (5th Cir.1986).

Here, the Everest Policy's "heading" provision is unambiguous. By the very language of the Everest declaration, entitling both builders risk endorsements as "Florida Amendatory Endorsement" does not thereby void seven pages of parties' agreed-upon terms. And within that endorsement, parties agreed to a suit deadline longer than the minimum protections in Louisiana law:

> No legal action or proceeding may be brought against the Company for the recovery of any claim under this Policy unless commenced within five (5) years from the discovery by the Insured of the loss or damage which gives rise to the claim.

Rec. Doc. 8-3 at 9 (emphasis omitted). Accordingly, based on those terms, Defendants' prescription argument is unavailing.

However, parties draw their lines of dispute around the titling of the Everest Policy endorsements. Left unaddressed is the scope of the later-in-time policy's ability to amend the earlier one. In this regard, the Everest Policy's "Substitution of Terms" section is key. As previously noted, the Everest Policy trumps the provisions of the National Fire Policy: "The provisions contained in this Policy shall supersede those of the Lead Policy wherever the same may conflict." *Id.* at 2. The section continues, however: "The coverage provided by this Policy will be no broader than the coverage provided by the Lead Policy." *Id.* The resulting question is plain: *Does the Everest Policy's extension of prescription prohibitively broaden coverage?*

5

We find parties' limitation intent ambiguous. On one hand, "coverage" is normally understood as an "inclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." Black's Law Dictionary (12th ed. 2024). From that perspective, a suit-filing extension would not thereby create broader coverage, but merely increase the time to seek coverage enforcement. On the other hand, however, this agreement was delivered in Louisiana, a state uniquely concerned over the vestment of rights through the running of liberative prescription. *See Bienvenu v. Defendant 1*, 2023-01194 (La. 6/12/24), 386 So. 3d 280, 285 (citation omitted, quotation cleaned up) ("A right is vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest . . . . Consistent with this definition, the court has determined that when a party acquires a right to defend against a cause of action, that right becomes a vested property right."). Under this, admittedly more strained, reading, parties to this Louisiana insurance contract would not wish for a broadening of Plaintiff's right to bring suit through the retreating of Defendants' vesting of rights through prescription. With two possible readings of the provision, however, we determine the language ambiguous.

If after applying the general rules of contract, a policy ambiguity remains, the ambiguous contractual provision is construed against the insurer and in favor of coverage as per the rule of strict construction. *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580 (citations omitted). This strict construction rule applies only if the ambiguous policy provision is susceptible to two or more

reasonable interpretations, which is not the case here. *Id.* Here, even if the insurer-favorable reading of the Everest Policy provision is reasonable—and, *arguendo*, we determine it so—Plaintiff still would receive the benefit of the longer, five-year period to file its action.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants Everest Indemnity Insurance Company and National Fire & Marine Insurance Company's *Motion to Dismiss* **(Rec. Doc. 7)** is **DENIED**.

New Orleans, Louisiana, this 12th day of September, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE